HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

   Plaintiff,

   v.

DALE DUPREE CASEY,

   Defendant.

Case No. 2:20-cr-00020-RAJ-1

ORDER

## I.   INTRODUCTION

This matter is before the Court on Defendant Dale Dupree Casey's Emergency Motion to Reopen Bond Under the Fifth, Sixth, and Eighth Amendments, 18 U.S.C. § 3142(f) or, alternatively, 18 U.S.C. § 3142(i). Dkt. # 56. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons set forth below.

## II.   BACKGROUND

Defendant Dale Dupree Casey was arrested on November 17, 2019, following a report of a physical domestic dispute at a residence owned by Jane Doe on the Lummi Indian Reservation. Dkt. # 58, 3. An individual, LT, called 911 to report that a man he referred to as "Dale" had hit and choked Doe, his aunt. *Id.* The responding officer spoke with LT; his girlfriend, BL, who also witnessed the incident; and Doe when he arrived at the scene, and all three confirmed that Defendant had choked Doe. *Id.* at 3-4. The officer noticed that Doe had a red mark on her left cheek and that she smelled of

ORDER – 1

intoxicants. *Id.* at 3.  He found Defendant inside the house and noted that it was difficult to understand him because his speech was slurred. *Id.*  The officer arrested Defendant and charged him with Assault and Battery 2nd Degree Domestic Violence. *Id.* at 4.  Two days later, the officer interviewed Doe, and she said she was very drunk and "blacked out" during the incident. *Id.*  She said she could not recall being strangled. *Id.*  Doe confirmed that she was in a dating relationship with Defendant for two and a half years. *Id.* at 5.  Prior to this incident, Defendant had been convicted in Swinomish Tribal Court for Assault on two occasions, with the victim being his spouse or intimate partner at the time. *Id.* at 6.

On February 6, 2020, Magistrate Judge John L. Weinberg ordered Defendant detained pending trial based on (1) the violent nature of the crime; (2) his record of convictions including felony theft, seven convictions for assault, two for harassment, conviction on four counts of criminal abuse of children, among other offenses; and (3) the detention recommendation of the Pretrial Services Office based on the danger to others and flight risk he poses, among other considerations.  Dkt. # 7 at 2.  On February 19, an indictment was returned charging Defendant with (1) Assault by Strangulation in violation of 18 U.S.C. §§ 113(a)(8) and 1153; and (2) Domestic Assault – Habitual Offender in violation of 18 U.S.C. § 117(a).  Dkt. # 12.  The Court later dismissed Defendant's second count because Defendant's prior convictions did not qualify as predicate offenses.  Dkt. # 44, 10.  Defendant's trial was scheduled for April 27, 2020 (Dkt. # 17), but was vacated on April 8 due to the inability of the Court to conduct a trial in light of the COVID-19 global pandemic and the need for social distancing (Dkt. # 40 at 1).

Defendant filed a motion to reopen the detention order on April 17 based on his alleged need for substance abuse treatment and new facts relating to his prior convictions.  Dkt. 43, at 1.  The motion was referred to U.S. Magistrate Judge Mary Alice Theiler.  Dkt. # 49 at 2.  On April 24, the Magistrate Judge denied the motion, finding that

ORDER – 2

Defendant continues to pose a risk of danger and a risk of nonappearance based on his criminal history, the nature of his current offense, and failures to appear for proceedings, as discussed in the February 6 detention order. The Court concluded that Defendant had "not shown any change in these factors that would weigh in favor of release." Dkt # 49 at 3. The Court also noted that while a substance abuse evaluation recommended six months of intensive outpatient treatment for Defendant, "there is no indication that such treatment would be available to defendant during this pandemic, or that outpatient treatment could adequately address the risk of danger and risk of nonappearance previously found by the Court." *Id.*

Defendant is currently held at the Federal Detention Center in SeaTac ("FDC SeaTac"). There has been one confirmed positive COVID-19 test of a male detainee. Dkt. # 56 at 4; Dkt. # 58 at 2. He was placed in quarantine. Dkt. # 58 at 2. On July 23, a staff member tested positive and is self-quarantining at home. The next day, the facility went into lockdown while it conducted a full contact-tracing investigation. *Id.* The lockdown of Defendant's unit has since been lifted. *Id.* Neither the detainee or staff member who tested positive are known to have contact with Defendant or his housing unit. *Id.*

### III.  DISCUSSION

Defendant seeks to reopen his detention hearing pursuant to the Bail Reform Act, specifically under § 3142(f) or, in the alternative, under 18 U.S.C. § 3142(i), because, he alleges, his detention violates his rights under the Fifth, Sixth, and Eighth Amendments to the United States Constitution. Dkt. # 61 at 1. The Court will consider each argument in turn.

    **A.**    **Fifth Amendment Due Process Rights**

Defendant argues that the current conditions of his confinement at FDC SeaTac amount to pretrial punishment and thus constitute a violation of the Fifth Amendment's due process protections. Dkt. # 56 at 6. Defendant cites *Bell v. Wolflish* for the

ORDER – 3

proposition that the due process protections do not allow pretrial punishment at all. *Id.* The Supreme Court in *Bell* went on to hold, however, that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" 441 U.S. 520, 539 (1979). The Court considers protecting individuals from COVID-19 to be a legitimate government objective. All of the conditions cited by Defendant as punitive are, in fact, the prison officials' efforts to protect detainees from a COVID-19 outbreak, or a result thereof: (1) the lockdown of Defendant's housing unit; (2) the prohibition of face-to-face meetings with counsel; (3) the ban on family visits; (4) the inability to access substance abuse treatment, which allegedly deprives him of medical care. *Id.* at 6. The safety precautions implemented as a result of COVID-19, both within and outside of FDC SeaTac, are challenging, but they serve a legitimate government objective and thus do not amount to punishment.

### B. Sixth Amendment Right to a Speedy Trial

While the Court is mindful of Defendant's Sixth Amendment right to a speedy trial, the Court is not convinced that Defendant's "increased depression and anxiety" (Dkt. # 56 at 7) indicate a violation of this right and compel Defendant's release. "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." *Beavers v. Haubert*, 198 U.S. 77, 87 (1905). "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker v. Wingo*, 407 U.S. 514, 522 (1972). Indeed, "a valid reason . . . should serve to justify appropriate delay." *Id.* at 531.

The delay of trial here is purely a consequence of the COVID-19 global pandemic. As the Court noted its earlier vacatur of the trial date, the Court has no ability to conduct a trial in this matter given the need for social distancing. Dkt. # 40. The circumstances here justify appropriate delay and do not compel Defendant's release.

ORDER – 4

### C. Eighth Amendment Prohibition Against Cruel and Unusual Punishment

Defendant relies primarily on *Helling v. Mckinney*, 509 U.S. 25 (1993) in arguing that his detention conditions violate the Eighth Amendment's prohibition against cruel and unusual punishment. Dkt. # 56 at 7. The Court in *Helling*, however, held that the prisoner had to show that he was being exposed to "unreasonably high levels of [environmental tobacco smoke]," and that officials had exposed him to such levels with "deliberate indifference." *Id.* at 35. Defendant fails on both counts.

First, the current circumstances in which only one male detainee has tested positive for COVID-19 are insufficient to demonstrate exposure to "unreasonably high levels" of the virus. Dkt. # 58 at 2. The fact that the infected detainee was later quarantined and has had no contact with Defendant or anyone in his housing unit (*id.*) further diminishes the likelihood of transmission and does not support a finding of Defendant's "unreasonably high levels" of exposure to the virus.

Second, Defendant's own account of the allegedly onerous conditions undermines a claim of "deliberate indifference." Such conditions reflect the numerous safety measures adopted by FDC SeaTac officials to reduce the risk of COVID-19 transmission. *See* Dkt. # 56 at 6. The Bureau of Prisons, has in fact, implemented a multi-phase coronavirus action plan aimed at preventing transmission, with health screening requirements for all staff and detainees, quarantine requirements for any detained with flu-like symptoms, visit suspensions, movement restrictions among the facilities, and protocols to maximize social distancing. Dkt. # 58 at 14. Officials who have implemented this action plan at FDC SeaTac to prevent and mitigate COVID-19 transmission can hardly be characterized as acting with deliberate indifference and do not violate the Eighth Amendment.

ORDER – 5

**D.     The Bail Reform Act**

     **i.     18 U.S.C. § 3142(f)**

Under 18 U.S.C. § 3142(f), a detention hearing may be reopened

> at any time before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

In determining whether there exist such conditions of release, the Court must consider the following factors: (1) the "nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) the "weight of the evidence against" the individual; (3) the "history and characteristics" of the individual, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

Defendant has failed to present new information that "has a material bearing" on whether there are conditions of release that will reasonably assure his appearance at trial and the safety of any other person and the community.  While he claims "circumstances . . . have now changed drastically," Dkt. # 56 at 10, he does not provide any information relevant to the § 3142(g) factors to determine whether conditions for release exist.  Instead, he claims that he can be released to his daughter's home where he can secure a job and obtain substance abuse treatment, while wearing monitors to track his movements and alcohol intake.  *Id.* at 10-11.  This statement does not counter or diminish Defendant's numerous failures to appear or his criminal history, which includes seven convictions for assault, among various other offense.  Dkt. # 7 at 2.  Defendant's

ORDER – 6

alleged "anxiety and stress" while incarcerated do not outweigh the flight risk and danger posed to the community. His alleged need for outpatient treatment for substance abuse was already addressed by Judge Theiler in the prior detention order, (Dkt. # 49 at 3) and Defendant offers no new information for this Court to now change course.

Finally, in conducting an analysis for release, "the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Defendant's effort to prove his innocence in his motion and reply is thus misplaced and irrelevant to the Court's analysis here. Dkt. # 56 at 2, Dkt. # 61 at 2.

### ii. U.S.C. § 3142(i)

Alternatively, Defendant seeks relief under U.S.C. § 3142(i), which provides for the "temporary release" of a person in custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Defendant claims that the Fifth and Sixth Amendment considerations he raised provide "compelling reason[s]" for release. The Court disagrees. As discussed above, the Court does not find any violations of Fifth or Sixth Amendment rights. In the absence of any other compelling reasons, the Court cannot determine such release is necessary.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Emergency Motion to Reopen Bond.

DATED this 30th day of July, 2020.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 7